UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GORDON GLENN HOOVER, | § | |
| TDCJ # 02015289, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19-0905 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Gordon Glenn Hoover, who proceeds *pro se*, is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Hoover filed a petition for a federal writ of habeas corpus seeking relief from a state drug conviction (Dkt. 1). Respondent Lorie Davis filed a motion for summary judgment (Dkt. 12) and a copy of the state court records (Dkt. 13), and Hoover has responded (Dkt. 18). Hoover also has filed a motion for the Court to take judicial notice of Texas Rule of Evidence 613(a) (Dkt. 16).

Hoover's claims are ripe for decision. Having now considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that the petition should be **denied** for the reasons that follow.

## I. BACKGROUND

### A. Procedural Background

In 2015, Hoover was convicted by a jury of possession with intent to deliver a controlled substance in the 9th District Court for Montgomery County, Hon. Kelly Case

presiding, Case No. 14-05-04954-CR. The jury sentenced him to 99 years in TDCJ (Dkt. 13-21, at 164-67).[1]

On April 26, 2017, the appellate court affirmed the judgment against Hoover. *Hoover v. State*, Case No. 09-15-00255-CR, 2017 WL 1536461 (Tex. App.–Beaumont, Apr. 26, 2017, pet. ref'd); *see* Dkt. 13-12. The Texas Court of Criminal Appeals refused Hoover's petition for discretionary review on September 20, 2017 (Dkt. 13-1). Hoover did not petition the United States Supreme Court for a writ of *certiorari*.

On March 29, 2018, Hoover executed a state habeas application (Dkt. 13-21, at 6-30). The trial court entered findings of fact and conclusions of law recommending denial of habeas relief (*id.* at 120-24). On October 10, 2018, the Texas Court of Criminal Appeals denied the application on the trial court's findings without written order (Dkt. 13-20).

On March 11, 2019, Hoover filed a petition for writ of habeas corpus in these federal proceedings (Dkt. 1).

### B. Factual Background

A jury convicted Hoover of possession with an intent to deliver methamphetamine in an amount of 4 grams or more but less than 200 grams.

Hoover was arrested on May 4, 2014, by Officer Salvador Maldonado of the Splendora Police Department. He was driving with a passenger, Stacey Daniels, when Maldonado pulled him over for traffic violations. Maldonado testified at Hoover's trial

---

[1]     Throughout this memorandum opinion, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case-filing ("ECF") system.

that, after being pulled over, Hoover presented an identification card that appeared to be fake. He also testified that Hoover was nervous, was not making eye contact, and was sweating. Based on the suspected false identification card and Maldonado's developing suspicion of a drug offense, Maldonado asked for consent to search the vehicle. Hoover gave his consent. In the middle console, Maldonado found a digital scale with a substance on it that Maldonado, in his training and experience, recognized as methamphetamine (Dkt. 13-6, at 55-76).

Maldonado testified that when he initiated Hoover's arrest, Hoover fled. Maldonado chased him on foot and, with the assistance of another officer, detained him. Hoover then provided his real name (*id*. at 74-85). Maldonado testified that, as Hoover ran, Maldonado saw something fall to the ground that he thought was Hoover's hat (*id*. at 86-87). Another officer then walked around the area where Hoover had run and found a brown paper bag with 143 grams of methamphetamine (*id*. at 88-93). When searching Hoover's car, Maldonado found drug paraphernalia and additional drugs in Daniels' purse (*id*. at 86-88, 98-100). Later, when Hoover and Daniels were being booked, officers recovered drug paraphernalia and an additional 7 grams of methamphetamine from Daniels' bra (*id*. at 94, 204-05).

Maldonado also testified that a man named Jimmy Myers, who had a home in Splendora off of Tram Road, had been arrested by the Montgomery County Constable's Office for "manufacture and delivery of a controlled substance" and "possession of methamphetamine," involving a "large amount" of drugs (*id*. at 105-08).

Daniels then took the stand and testified that she had dated Hoover and, on the day

of the arrest, Hoover was in possession of drugs and instructed her to hide some in her bra (*id*. at 197-203).    She also testified that, just before Maldonado arrested them, they had stopped off of Tram Road at the house of a person that Hoover called "Jim" and said was a "childhood friend" (*id*. sat 202-03).   Daniels stayed in the car for 30-45 minutes while Hoover went inside, and did not see Hoover walk out of the house with any money or with drugs (*id*. at 207).   Within minutes of leaving the house, Maldonado pulled them over, and Daniels heard Hoover tell Maldonado that they had been coming from her sister's house on Tram Road (*id*. at 208).   On cross-examination by Hoover's counsel, she testified that Hoover had been in love with her, that they had done drugs together, and that Hoover had been willing to take the drug charges himself to prevent Daniels from being charged (Dkt. 13-7, at 38-39).

Hoover's counsel strategy for the defense was to argue that Hoover never had possession of any drugs, including the 143 grams found in the brown paper bag.  Counsel moved to suppress the brown paper bag and its contents, which had been found on the ground rather than in Hoover's car.  The trial court held a hearing (Dkt. 13-6, at 7-55) and then denied the motion (*id*. at 54).

After the court denied suppression of the evidence, Hoover's counsel adjusted his strategy.  He argued that the brown bag of drugs had been planted by the officers after chasing Hoover, and had never been in Hoover's possession.  In support of his theory, counsel offered into evidence the Splendora Police Department's incident report from the arrest (Dkt. 13-10, at 158-68), which also contained information that incriminated his client.  After confirming that counsel actually wanted to offer the report, the court

admitted it into evidence.[2]   Counsel then used the report to point out that, although

Maldonado had testified that he had seen something fall to the ground when Hoover ran

away, his report, which was prepared shortly after the arrest, made no mention of a

falling object:

> [Defense counsel]:   Okay. Officer Maldonado, I have a copy of the incident report by Splendora Police Department. . . . . [C]ould you just read this second paragraph here in your report talking about Sergeant Crosby? . . . .
>
> [Maldonado]:   "I was advised soon after by Sergeant Crosby, unit 3803 of Patton Village Police Department who arrived on scene that he viewed a brown bag near the area where we . . . detained [Hoover].  The brown bag had a sealable bag inside that contained a granulated substance weighing 147[[3]] grams that tested positive in a narcotics field test kit for methamphetamine.  I then continued searching the vehicle.  I located a used syringe and a small sealable bag with a small amount of a granulated substance inside a small makeup bag on the front passenger seat where [Daniels] was seated. . .
>
> [Defense counsel]:   That's enough.   So in there you're stating that Sergeant Crosby stated that he viewed a bag as he was standing around the scene?
>
> [Maldonado]:   I stated he located a bag.
>
> [Defense counsel]:   Okay. Okay. You come back, detained Mr. Hoover, but you never mentioned you had seen them drop anything.

Dkt. 13-6, at 179-80.  Before Maldonado responded, the prosecutor offered the full report

---

[2]      In these proceedings, Hoover claims that the report was highly prejudicial and that the trial court was "astonished" at his counsel's decision (Dkt. 18, at 9-10).   He points to the portion of the transcript when his counsel introduced the report, after which the Court asked, "You want to offer that?  I just want to make sure I understand you" (Dkt. 13-6, at 178).

[3]      Although the incident report states that the bag contained 147 grams of methamphetamine, the trial record consistently refers to the amount as 143 grams.   The difference is immaterial to the issues before the Court.

under the rule of optional completeness:

> [Prosecutor]: And, Judge, under optional completeness, I'd like to read two lines of Defense Exhibit 1. . . . I'm on the same page, two paragraphs down. This is at the jail. "[Daniels] soon after began crying and stated she had placed those items in her bra while on the traffic stop due to [Hoover] had told her to hide them from law enforcement. I then spoke with [Hoover] who stated that he had the sealable bag of a granulated substance weighing 147 grams of methamphetamine tucked far into his pants. [Hoover] stated when he began running, the bag of methamphetamine fell through his pant leg. [Hoover] also stated he had told [Daniels] to hide the items found in her bra while on the traffic stop."

(*id*. at 180-81). Defense counsel then elicited testimony from Maldonado that he had no written or recorded statement from Hoover declaring that the drugs had been in his possession (*id*. at 181-82).

The jury found Hoover guilty, and Hoover pleaded true to two habitual offender allegations. The jury then sentenced him to 99 years in TDCJ. The appellate court confirmed the conviction.

On state habeas review, Hoover's application raised eight grounds for relief, including multiple claims that his trial counsel was constitutionally ineffective (Dkt. 13-21, at 6-30). Trial counsel submitted an affidavit responding to issues designated by the trial court (*id*. at 91-92; *see id*. at 88-90). Counsel explained that his general strategy was to argue that the drugs in question were not in Hoover's possession:

> Mr. Hoover was seen on police videos being patted down after a traffic stop, however no drugs were found. Mr. Hoover is then seen fleeing the scene. Later he is caught and brought back. No drugs are ever found on his person, but rather in a field across from the initial automobile stop. Our contention was the drugs were not his (as he had already been searched and nothing was found) and therefore were planted or had been discarded by someone else in that public field. We attempted to suppress the drug

evidence the State presented. The motion to [s]uppress was denied.

(*Id*. at 91, ¶ 3). Regarding his decision to ask Maldonado to read from the incident report, counsel averred that his strategy was to argue that officers had planted the evidence:

> The strategy to allow Officer Maldonado to read from the report was to impress upon the jury that Mr. Hoover did not and could not discard the drugs in the field. [Maldonado and other officer] ran to get Mr. Hoover. There is no mention in his own report that he saw Mr. Hoover deliberately or accidentally drop anything or leave anything on the ground as he ran. When asked if the drug spotted by Sergeant Crosby in the brown bag was his, he denied it was his and stated that he had been searched already and nothing was found and insisted, "You can't put this on me!" It was impossible that Sergeant Crosby "saw" the bag from where they were holding [Hoover] across from the public field as it was dark. It was more likely the police "planted" the evidence after the chase.

(*Id*. at 92, ¶ 6). Counsel stated that he used Daniels' testimony to provide the jury with an explanation for Hoover's willingness to take charges for drugs he had not actually possessed:

> Testimony from [Daniels] regarding [Hoover's] willingness to claim the drugs found on her, was simply to show that [Hoover] did not want [Daniels] to face charges for any drugs. Because of his love for her, he was willing to take the charges for any drugs found on her, to keep her out of [j]ail.

(*Id*. ¶ 7).

The trial court entered findings of fact and conclusions of law recommending denial of habeas relief (*id*. at 120-24). The trial court found that trial counsel's affidavit was "credible" (*id*. at 121, ¶ 6). It attributed counsel's decision to admit the contents of the incident report to trial strategy:

> [Counsel] intentionally admitted the contents of Officer Salvador Maldonado's offense report in a strategic effort to point out an

inconsistency between Maldonado's report and testimony at trial.

(*Id*. ¶ 13). The court also determined that counsel had "successfully mitigated" the confession in the report "by offering evidence as to why [Hoover's] confession was not truthful" (*id*. ¶ 14). It then concluded that counsel's "strategic decision" to admit the contents of Maldonado's report was "not so outrageous that no competent attorney would have done the same" (*id*. at 123, ¶ 4). The court further concluded that counsel's decision to call Daniels in support of his defensive theory and to elicit testimony about Hoover's love for her was "reasonable" (*id*. at 122-23, ¶¶ 2, 5), and that Hoover had "failed to establish that his trial counsel was deficient or that any deficiency of counsel affected the outcome of [his] case" (*id*. at 123, ¶ 9).

Hoover's federal petition raises three ineffective-assistance-of-counsel claims regarding his trial counsel. Respondent has moved for summary judgment and seeks dismissal of all of Hoover's claims.

## II.     LEGAL STANDARDS

### A.      *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (internal quotation marks and citation omitted). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id*.

### B.      The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable

provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under the AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under the AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 517 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear

error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal citation and quotation marks omitted). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (internal quotation marks and citations omitted). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 135 S. Ct. at 1376 (internal citation and quotation marks omitted).

On factual issues, the AEDPA precludes federal habeas relief unless the state

court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

## C. Summary Judgment Standard in Habeas Corpus Proceedings

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)— which mandates that findings of fact made by a state court are presumed to be correct— overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

## III. ANALYSIS

Hoover's federal petition claims that his trial counsel was constitutionally ineffective when counsel:

> (1)     requested that Officer Maldonado, the arresting officer, read from his incident report on the witness stand, thus allowing the prosecutor to introduce the full report containing incriminating evidence;

(2)     allowed the prosecution to misrepresent its relationship with Daniels, who was with Hoover at the time of arrest and testified at his trial; and,

(3)     elicited testimony from Daniels that Hoover was "in love with" her and therefore had falsely claimed possession of some drugs at the scene.

Respondent moves for summary judgment on the merits of all three claims.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that the defendant was prejudiced:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694). *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at 189 (internal citation and quotation marks omitted). The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004). The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (internal citations and quotation marks omitted).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms. *Strickland*, 466 U.S. at 689. A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades*, 852 F.3d at 432. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see Rhoades*, 852 F.3d at 434.

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden. The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's

actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (internal citations and quotation marks omitted). *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

The state habeas court determined that all of Hoover's *Strickland* claims lacked merit. The Court now addresses each claim in turn.

## A.     Incident Report

Hoover claims that his trial counsel was constitutionally ineffective when he requested that Maldonado read from his incident report on the witness stand, thus allowing the prosecutor to introduce the complete report, which included incriminating statements by Hoover that the drugs had fallen from his pants leg (Dkt. 1, at 17-32). He argues that counsel's decision "eliminated" the prosecution's burden of proof.

The state habeas court determined that Hoover's counsel had "intentionally admitted" the report's contents "in a strategic effort to point out an inconsistency between Maldonado's report and testimony at trial" (Dkt. 13-21, at 121, ¶ 13). At the time the report was admitted, the trial court already had denied Hoover's motion to suppress the brown paper bag and its contents, which had been recovered from the ground during Hoover's arrest. Hoover's counsel stated in his affidavit that, after the suppression of evidence was denied, he was pursuing a theory that the officers had planted evidence against Hoover and wanted to "impress upon the jury that Mr. Hoover did not and could

not discard the drugs in the field" (*id*. at 92, ¶ 6).[4]   He highlighted for the jury the fact that the report made no mention that the officers "saw Mr. Hoover deliberately or accidentally drop anything or leave anything on the ground as he ran" (*id*.; *see* Dkt. 13-6, at 180).   The state habeas court found counsel's affidavit credible (Dkt. 13-21 at 121, ¶ 6).   It concluded that counsel's "strategic decision" to admit the report's contents "was not so outrageous that no competent attorney would have done the same" and that Hoover was not prejudiced by counsel's performance (Dkt, 13-21, at 123,  ¶ 4, ¶ 9).

Hoover argues that, before his counsel introduced the incident report, the prosecution had presented a theory that Hoover had hidden the brown paper bag in his hat, which was implausible, and that his counsel's introduction of the report relieved the State of its burden to prove possession (Dkt. 18, at 21-22).   He states that the court had been "astonished" by counsel's decision to introduce the report.   *See id*. at 9-10 (citing Dkt. 13-6, at 178).   He also points out that the state habeas court concluded only that counsel's strategy was not "outrageous," thus apparently declining to find it "reasonable."

A successful *Strickland* claim requires Hoover to show that his counsel's performance was deficient and fell below prevailing professional norms in light of the circumstances at the time.   *See Rhoades*, 852 F.3d at 431-32.   On habeas review, Hoover

---

[4]      *See id*. ("It was impossible that Sergeant Crosby "saw" the bag from where they were holding the Applicant across from the public field as it was dark. It was more likely the police "planted" the evidence after the chase"); *id*. at 91, ¶ 3  ("Mr. Hoover was seen on police videos being patted down after a traffic stop, however no drugs were found. Mr. Hoover is then seen fleeing the scene. Later he is caught and brought back. No drugs are ever found on his person, but rather in a field across from the initial automobile stop. Our contention was the drugs were not his (as he had already been searched and nothing was found) and therefore were planted or had been discarded by someone else in that public field.")

must show that the state habeas court's decision was "unreasonable" when it determined that his counsel's strategic decision to introduce the report did not violate *Strickland*'s deferential standard.[5]

This Court need not address the deficient performance prong, however, because Hoover fails to show prejudice. *See Strickland*, 466 U.S. at 697 (a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"); *Sanchez v. Davis*, 936 F.3d 300, 306 (5th Cir. 2019). Hoover argues that the prosecution had limited evidence of his guilt before the report came into evidence, and that the confession in the incident report was extremely damaging to his case. However, at trial, the prosecution introduced ample evidence, apart from the incident report, that supported the jury's verdict that he was guilty of the charged offense. In particular, the State introduced evidence that Hoover had falsely identified himself to Maldonado, that he was nervous and sweating, that Maldonado found other drugs and paraphernalia during his vehicle search, and that Hoover fled when Maldonado initiated his arrest. In addition, Daniels had testified that she and Hoover had been to a residence that the prosecution had identified as the home of a known drug manufacturer, that Hoover was in possession of methamphetamine, and that he had asked her to hide some drugs and paraphernalia in her bra when Maldonado pulled them over.

To the extent Hoover argues that the report was prejudicial because it linked him

---

[5]    *See  Rhoades*, 852 F.3d at 432 (any "strategic decisions" made by trial counsel "must be given a strong degree of deference); *Strickland*, 466 U.S. at 689-90 (strategic decisions are "virtually unchallengeable").

to the brown bag containing 143 grams of drugs, as opposed to much smaller quantities in the car and on Daniels' person, the argument is unavailing. As the prosecutor highlighted at trial, specific proof that Hoover had possessed the drugs in the brown paper bag was not necessary for conviction, because the State was only required to prove an amount between 4-200 grams.[6] In his closing arguments, the prosecutor stated:

> The defendant is charged by the state of Texas under the indictment from the grand jury with possessing with intent to distribute or deliver 4 grams to 200 grams. It doesn't say he's charged with State's Exhibit 2A, specifically. It doesn't say he is charged with State's Exhibit 1A, specifically. Y'all can agree that he -- it was all his. Y'all can say 1A, 2A, 3A, it's all his. He is good for it. That equals 150-something grams. That's between 4 and 200. He's good for it. Everyone can say that. Half of y'all can say that. The other half can say, you know what, I don't know. This bag thing, yeah, it's him, probably him. I don't know. But we know -- we know 7.3 grams is his. That's between 4 and 200 grams. And what did he do? He didn't just intend to deliver it. He delivered it to Ms. Daniels. So half of y'all can think that. Or you can say, fine. Maybe a couple of those baggies were hers. So long as you get 4 to 200 grams. Don't get confused that someone's charged with the specific piece of evidence. That's not the law. That's not what happened. All of these scenarios are at y'all's disposal and you can do what you want with it.

(Dkt. 13-7, at 53-54). Moreover, the drugs in the brown paper bag did not affect the sentencing range presented to the jury. Because Hoover pleaded true to two enhancement paragraphs based on his prior convictions, the available sentencing range for a conviction

---

[6] The court charged the jury, "if you find from the evidence beyond a reasonable doubt that on or about May 4th, 2014, in Montgomery County, Texas, the defendant, Gordon Glenn Hoover, did then and there unlawfully, knowingly possess with intent to deliver a controlled substance, namely, methamphetamine, weighing more than 4 grams and less than 200 grams by aggregate weight, including any adulterants or dilutants, then you will find the defendant guilty of possession with intent to deliver a controlled substance, namely, methamphetamine, weighing more than 4 grams and less than 200 grams by aggregate weight, including any adulterants or dilutants, as charged in the indictment" (Dkt. 13-7, at 45).

based on any amount between 4-200 grams was a prison term of 25-99 years.[7]

Given the strong evidence of Hoover's culpability for possession with intent to deliver 4-200 grams, with or without the bag containing 143 grams of methamphetamine, he fails to demonstrate that his counsel's allegedly deficient performance caused him prejudice at either the guilt-innocence phase or the punishment phase of his trial. *See Norris v. Davis*, 826 F.3d 821, 835 (5th Cir. 2016) (petitioner failed to show prejudice "in light of the overwhelming evidence of his guilt"); *Rhoades*, 852 F.3d at 432 (prejudice under *Strickland* requires a showing of "a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different"). He also fails to show that the state habeas court unreasonably applied *Strickland* when it concluded that Hoover was not prejudiced by counsel's performance. *See* 28 U.S.C. § 2254(d).

### B. Stacey Daniels

Two of Hoover's claims pertain to Daniels' testimony at his trial. One claim concerns the jury's perception of who had subpoenaed Daniels, and the second concerns her testimony about her relationship with Hoover.

---

[7] When charging the jury at the punishment phase, the Court instructed the jurors as follows:

> Since you have answered True to the allegations in enhancement paragraphs A and B of the indictment, then you are instructed that the range of punishment for possession with intent to deliver a controlled substance, namely methamphetamine, weighing more than 4 grams and less than 200 grams by aggregate weight, including any adulterants or dilutants is confinement in the Institutional Division of the Texas Department of Criminal Justice for Life or any term of years not less than 25 nor more than 99 years.

(Dkt. 13-8, at 6).

## 1.     Subpoena

Hoover argues that his trial counsel was constitutionally ineffective when he allowed the prosecution to misrepresent its relationship with Daniels, who was with Hoover at the time of arrest and testified at his trial (Dkt. 1, at 9-17).   In particular, Hoover appears to claim that his trial counsel allowed the prosecutor to elicit testimony from Daniels that Hoover's counsel, rather than the prosecutor, had subpoenaed Daniels.[8] Hoover apparently concedes that, in fact, his counsel did subpoena Daniels, but maintains that Daniels had appeared on the prosecution's pre-trial witness list.   *See* Dkt. 1, at 14 (citing Dkt. 13-3, at 43).   Hoover argues that, without Daniels' testimony, the case against him would have been harder to prove and that trial counsel therefore "assisted" the prosecution (*id*. at 17-18).   In these federal proceedings, Hoover argues that trial counsel failed to correct the "misrepresentation" before the jury as to whether Daniels had been on the prosecution's witness list.[9]

The parties agree, and the state habeas court determined, that Daniels was initially on the prosecution's witness list.[10]   Hoover's counsel specifically stated in his affidavit that he had no "pact" with the prosecution regarding Daniels:

The State had Ms. Stacey Daniels on their witness list. She had already

---

[8]     On the witness stand, when the prosecutor asked Daniels, "I did not subpoena you to come to court, right," Daniels answered, "No" (Dkt. 13-6, at 197).

[9]     *See* Dkt. 18, at 5 ("the prosecution made it a highlighted point before the jury to have Stacey Daniels (an accomplice as a matter of law) under direct examination, establish that she [in] fact was subpoenaed by the defense for trial testimony for whatever defensive purpose").

[10]     *See* Dkt. 13-21, at 121, ¶ 8 ("Although the State listed Stacey Daniels as a potential witness on its discovery notice, the State did not subpoena Daniels to testify, but instead had her sworn in to testify when she appeared in court at [Hoover's] request.").

> plead out to a [possession of a controlled substance] charge and was on probation. Ms. Daniels was to be used by the state to place her at the scene as a witness that applicant had drugs on him. No 'pact' was ever made with the State and Defense Counsel. When questioned, the State admitted they had not subpoenaed her and did not intend to use her as a witness.

(Dkt. 13-21, at 91, ¶ 1).  He further averred that Hoover had "insisted" that the defense subpoena Daniels to testify that Hoover "did not have the drugs on him for which he was being charged" (*id.* ¶ 2).   The state habeas court determined, based on part on counsel's affidavit, that the prosecution had not misrepresented Daniels' "status as a witness or how she arrived in court," that Hoover had "directed [his counsel] to summon Daniels" to testify in support of his defense, and that Hoover's counsel had offered Daniels' testimony "in furtherance of his defensive theory that [Hoover] never possessed the methamphetamine for which he was charged in this case" (*id.* at 121, ¶¶ 9-11).

In these proceedings, Hoover fails to demonstrate that the state court determinations finding no actual misrepresentation were unreasonable in light of the record.   He also fails to demonstrate that the state court made determinations that unreasonably applied *Strickland* when it determined that trial counsel's "strategic decision to call Daniels as a witness in furtherance of his defensive theory was reasonable" and that Hoover had not been prejudiced by counsel's performance (*id.* at 122-23, ¶¶ 2, 9).   Habeas relief therefore is not warranted under 28 U.S.C. § 2254.

### 2.    Relationship with Hoover

Hoover argues that his counsel was constitutionally ineffective when he elicited testimony from Daniels that Hoover was "in love with" her and therefore had falsely claimed possession of some drugs at the scene (Dkt. 1, at 32-44).

Daniels first took the stand during the prosecution's case-in-chief, and testified that Hoover had possessed and used drugs on the day they were arrested (Dkt. 13-6, at 203). After the prosecution rested, Hoover's counsel recalled Daniels to the stand as part of the defense's case. Daniels testified that Hoover had been "willing to take the charge for everything" if Maldonado would let Daniels go, and that he had offered to take the blame "because he loved [Daniels]" (Dkt. 13-7, at 39). Trial counsel's affidavit in state habeas proceedings stated that eliciting this testimony from Daniels was part of his strategy to mitigate the impact of Hoover's statements claiming ownership of the drugs Daniels had when they were arrested (Dkt. 13-21, at 92, ¶ 7). The state habeas court concluded that counsel had not been constitutionally ineffective. It specifically determined that trial counsel's "strategic decision to elicit testimony from Daniels regarding [Hoover's] love for her was reasonable" and that counsel had "successfully elicited" the testimony "in an effort to further the defensive theory that [Hoover] confessed to possessing the methamphetamine only because he did not want Daniels to face criminal charges." *See* Dkt. 13-21, at 122, ¶ 15; *id.* at 123, ¶ 5.

In these proceedings, Hoover argues that his counsel improperly collaborated with the prosecution and should have known that her testimony would be detrimental to the defense.[11] However, trial counsel's affidavit, which the state habeas court found credible,

---

[11]  *See*, *e.g.*, Dkt. 18, at 6 ("Counsel's purported strategy was that Stacey Daniels was summoned by the defense to corroborate the defense's strategy that petitioner did not possess or had any knowledge of drugs. However, oblivious to petition and safeguarded by counsel, Daniels was actually anticipated by the prosecution to 'Refute' the defense with numerous drug possession acts (and usage) by petitioner including visiting an alleged drug manufacturer's home").

stated that there had been no pact (Dkt. 13-21, at 91, ¶ 1). The state habeas court determined that Hoover had "directed [his counsel] to summon Daniels to court to testify in support of [his] defense" (*id*. at 121, ¶ 9) and that counsel's strategy to elicit testimony from Daniels was reasonable (*id*. at 122-23, ¶¶ 2, 5). Hoover's conclusory allegations of an improper collaboration between his attorney and the prosecution do not sufficiently demonstrate that the state habeas court's determination was an unreasonable application of *Strickland*.

Hoover also argues that, because Daniels' testimony was damaging, his trial counsel had a duty to further investigate and interview Daniels before she testified (Dkt. 18, at 15-17). As held in *Strickland*, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691; *see Newbury v. Stephens*, 756 F.3d 850, 873 (5th Cir. 2014). To establish prejudice for failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *see Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). Hoover argues that counsel's failure to investigate was prejudicial because, without the investigation into Daniels, the state habeas court concluded that Daniels was part of the defense strategy. This argument falls short of the standards in the case law cited above, which require a petitioner to point to specific evidence that would have been revealed. Because Hoover directs the Court's attention to no specific evidence regarding Daniels that would have been revealed through investigation, much less that such evidence would have changed the outcome of

his trial, his claim fails.  *See Miller*, 420 F.3d at 361.

The state habeas court determined that Hoover's counsel engaged in a reasonable strategy to explain why Hoover had taken responsibility for the drugs, which was consistent with counsel's general strategy to argue that Hoover was never in possession of the drugs.  Hoover fails to show deficient performance or prejudice in counsel's questioning of Daniels, and therefore has not demonstrated that the state habeas court's denial of relief was unreasonable under § 2254.

## IV.  CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal citation and quotation marks

omitted).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V.    CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1.    Respondent's motion for summary judgment (Dkt. 12) is **GRANTED**.  The petition for a writ of habeas corpus (Dkt. 1) is **DISMISSED**.

2.    Petitioner's motion for the Court to take judicial notice of Texas Rule of Evidence 613(a) (Dkt. 16) is **DENIED as moot**.

3.    A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED this day 23rd day of March, 2020.

George C. Hanks Jr.
United States District Judge